IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BENNY COOK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: |
| v. | ) | |
| | ) | |
| PEPSICO BEVERAGE | ) | |
| SALES, LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PEPSI BEVERAGES COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| DEFENDANTS | ) | |
| TO BE SERVED AT: | ) | |
| Registered Agent | ) | |
| Corporation Service Company | ) | |
| 112 SW 7TH Street | ) | |
| Suite 3C | ) | |
| Topeka, Kansas 66603 | ) | |
| | ) | |

## **COMPLAINT**

Plaintiff Benny Cook ("Plaintiff"), for his Complaint against Defendant Pepsico Beverage Sales, LLC and/or Pepsi Beverages Company ("Defendant" or "Pepsico"), as a result of Defendant's unlawful employment practices and conduct, alleges and states as follows:

### **JURISDICTION AND VENUE**

1.     The Court has personal and subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337 and 1343(a)(4), as well as § 706 of the Civil Rights

Act of 1964, as amended, 42 U.S.C. § 2000(e)5(f) (3), and Title VII of the Civil Rights Act (42 U.S.C. § 2000e, et seq.), and 42 U.S.C. §1981. This Court has supplemental jurisdiction over Kansas and common law claims.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Johnson County, Kansas, which is within the District of Kansas.

3.     Plaintiff submits that the unlawful employment practices alleged in this Complaint occurred in Olathe, Johnson County, Kansas which lies within the District of Kansas.

4.     Defendant Pepsico maintains a facility and is doing business in Olathe, Kansas.

## PARTIES

5.     Plaintiff is an African-American male and United States citizen. He resides in Kansas City, Missouri.

6.     Plaintiff is Muslim.

7.     Defendant is a business organized and/or headquartered in Purchase, New York.  At all relevant times, Defendant has been authorized to conduct business in the State of Kansas and operates a warehouse facility in Olathe, Kansas.

8.     Defendant is an "employer" within the meaning of Section 701(b) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII").

9.     Upon information and belief, Defendant currently employs, and during all relevant times employed, 500 or more persons.

10.    Defendant employed Plaintiff from January 2023 through February 2025.

## EXHAUSATION OF ADMINISTRATIVE REMEDIES

11.    On or about March 24, 2025, Plaintiff timely filed with the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination against Defendant on the basis of religious, national origin, and retaliation. The charge was forwarded to and dually filed with the Kansas Human Rights Commission ("KHRC"). *See Exhibit A -Charge of Discrimination*.

12.    On September 9, 2025, EEOC issued Plaintiff a Right to Sue Notice. *See Exhibit B – Notice of Right To Sue*

## FACTUAL BACKGROUND

13.    Plaintiff is an African-American with a dark complexion.  He is Muslim and adheres to Islamic beliefs.

14.    Defendant hired Plaintiff as a picker and increased his salary twice during his employment.

15.    During his employment, Plaintiff also worked as a forklift driver, painter, inventory and maintenance worker. Plaintiff a significant number of overtime such that he earned annually more than $100,000.

16.     Defendant's managers and employees who worked with Plaintiff, had knowledge of Plaintiff's race and religion as well as that of his wife (who is Ghanaian)

as these managers, supervisors and workers commented about Plaintiff's race and religion.

17.     In his position, Plaintiff primarily reported to Tony (LNU), but Defendant assigned Plaintiff several other supervisors.

18.     Beginning in September 2023, Defendant's managers, supervisors and workers began to target and harass Plaintiff by using racial slurs and making racially offensive comments about Plaintiff and his wife.  The harassment continued until the day of Plaintiff's termination.

19.     Plaintiff daily wore clothing reflecting his religious beliefs.

20.     Defendant permitted its' managers and supervisors to harass Plaintiff concerning his dress nearly every day. In turn, these managers permitted other workers to harass Plaintiff.  Defendant's managers and workers repeatedly asked Plaintiff why he was wearing a dress. Defendant's managers commented "I like the dress you got on."  Some workers referred to Plaintiff as Prince Alibubu. As these comments were made in the presence of Defendant's managers, they laughed.

21.     Defendant allowed managers and supervisor's to adopt policies which only applied to Plaintiff.  He was advised and prohibited from wearing a mask.

22.     Plaintiff made a written religious exemption request and provided the request to human resources.  Human resources approved the request and allowed Plaintiff to pray while at work.  Plaintiff prayed approximately three to four times a day. The total time for these short prayers were approximately twenty (20) to twenty-five (25) minutes.   Defendant designated a spot for him to pray.

23.     On occasion, Plaintiff would pray outside or away from the work area if the designated spot was not available.  Defendant expressed no undue hardship or burden by permitting Plaintiff to pray.  Upon information and belief, other workers who were less productive were engaged in non-work activities such as taking personal phone calls, talking with other workers or taking smoke breaks while on company time.

24.     Shortly after HR gave him an exemption, Defendant advised Plaintiff that he must clock out while praying.   HR next created a new policy (clocking out while praying) after another worker, Bobby Chavis, complained about Plaintiff. Chavis took several breaks without clocking out and failed to meet his quota. Defendant ignored Chavis' violations.

25.     Although Plaintiff's total prayer time was not more than 25 minutes, Defendant permitted human resources to deduct two (2) hours of Plaintiff's time each day.  Defendant did not subject other workers who took smoke breaks or conducted personal business to the same policy.  This discriminatory policy resulted in lost wages and required Plaintiff to work many overtime hours.

26.     Human resources failed to provide Plaintiff with written policy concerning a religious exemption. Defendant modified the exemption at its whim. Defendant treated Plaintiff very differently than workers who did not share his race and religious background.

27.     Approximately October 2024, Defendant disciplined Plaintiff for an alleged workplace safety violation. Plaintiff's supervisor, Tony claimed an injury

while Plaintiff operated a forklift. The discipline happened just days after Plaintiff explained to Tony that his religious beliefs prevent him from certain kind of physical touching with men and women. Plaintiff witnessed Tony's anger during and after the conversation.

28.     By November 2024, Plaintiff complained to his supervisors about the discrimination and pay disparity. On Saturdays and Sundays, Defendant permitted several workers to get overtime hours. Defendant required Plaintiff to sign-up before working weekend overtime. Defendant's managers, Tony and Eugene, allowed workers to get overtime by reporting to work prior to their assigned shift. These managers excluded Plaintiff from enjoying the same benefits.

29.     Defendant prohibited Plaintiff from utilizing company benefits and participating in overtime work which he needed to balance the time deducted for praying.

30.     Plaintiff also requested bereavement leave for which Defendant offered three days. Plaintiff's supervisor denied him leave.

31.     Plaintiff also accumulated one week of vacation leave. To date, Defendant has refused to pay Plaintiff his vacation hours.

32.     On January 31, 2025, Plaintiff's supervisor called and informed him that he was suspended for alleged conduct which happened on MLK holiday. Defendant alleged that Plaintiff used the n-word. Defendant failed to conduct an honest and fair investigation. Defendant refused to give Plaintiff a report concerning the investigation.

33.     Upon information and belief, Defendant's manager, Tony, terminated Plaintiff to prevent him from processing a grievance against him.  On the day before Tony terminated him, another African-American worker requested to file a complaint against Tony for his harassing behavior.

34.     Defendant permitted its manager to violate company policy and ultimately terminate Plaintiff to avoid a complaint.  Defendant permitted the firing despite one worker's statement which contradicted the false and malicious complaint against Plaintiff.

35.     Defendant permitted many of its managers, Tony, Eugene and Bobby to commit clear violations of Pepsico policies and received no reprimand or consequence. Eugene (plant manager) also directed a third-shift supervisor not to interview Plaintiff for a position.

36.     Upon information and belief, none of the other non-Muslim and white workers, managers and/or supervisors who worked in a similar job have been subjected to harassment, retaliation, discrimination, pay disparities, demands for clocking out, salary recalculation, wage withholding, non-payment of earned and accrued leave, and termination.

37.     Defendant's discrimination and retaliation have impacted Plaintiff's wages, career opportunities and caused emotional distress.

### COUNT I
### Religious Discrimination
### Violation under Title VII of the Civil Rights Act

38.     Plaintiff incorporates by reference every other allegation made herein.

39.     During the course of Plaintiff's employment, he was subjected to harassment and disparate treatment of a religious nature including, but not limited to, offensive comments, disciplinary actions, and termination.

40.     The harassment was pervasive or severe enough to alter the terms, conditions, and privileges of his employment.

41.     The conduct adversely affected the terms, conditions and/or privileges of Plaintiff's employment and affected Plaintiff's ability to perform his job duties as well as his career reputation which will affect his future employability and earning capacity.

42.     Plaintiff complained to Defendants' management personnel about the religiously offensive conduct, and Defendant knew or should have known of the improper conduct, but failed to take prompt and appropriate corrective action to end the harassment of Plaintiff.

43.     The religiously harassing conduct, combined with Defendants' failure to correct that conduct, made Plaintiff's working conditions intolerable.

44.     Plaintiff's religion was a motivating factor in his termination.

45.     As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendants and/or Defendants' employees/agents during the course of his employment with Defendant, based on his religion, in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e 2(a).

46.     As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

47.     As a further direct and proximate result of Defendants' actions and/or inactions, Plaintiff has suffered humiliation, emotional distress, pain and suffering, inconvenience, mental anguish, and related compensatory damages.

48.     Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including religious harassment.

49.     Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

50.     Defendants' managers responsible for setting or enforcing policy in the area of discrimination were aware of Plaintiff's complaints of harassment, but failed to properly respond to those complaints.

51.     By failing to take prompt and effective remedial action, Defendant condoned, ratified and/or authorized the harassment of Plaintiff.

52.     As shown by the foregoing, Defendant engaged in these discriminatory practices with malice or with reckless indifference to the federally protected rights of Plaintiff.  Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

53.    Plaintiff is additionally entitled to an award of damages for the injury to Plaintiff's reputation and his future employability and earning potential.

54.    Plaintiff is entitled to recover from Defendant his reasonable attorneys' fees, as provided in Section 706(k) of Title VII, 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for such damages, actual, nominal and punitive, as are fair and reasonable, for his reasonable attorneys' fees and costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

## COUNT II
### Race Discrimination
### 42 U.S.C. § 1981
### (All Defendants)

55.    Plaintiff incorporates by reference every other allegation made herein.

56.    Plaintiff is an African-American man.

57.    Defendant's discriminatory actions against Plaintiff were based on his race.

58.    During the course of Plaintiff's employment, Defendant's managers and representatives, acting within the scope and course of employment, engaged in intentional discrimination against Plaintiff.

59.    Defendant had knowledge of the discrimination and failed to act or take any action against its managers and supervisors.

60.    Defendant's discriminatory treatment towards Plaintiff caused tangible harm to Plaintiff in that it affected the terms, conditions, and privileges of his employment.

61.    The conduct as described herein would have offended a reasonable person of the same race in Plaintiff's position.

62.    Defendants intentionally discriminated against Plaintiff. Other similarly situated Caucasian employees were not subject to the same discriminatory treatment.

63.    Defendant exacerbated the racially hostile environment and racial discrimination in Plaintiff's work place.

64.    Plaintiff suffered an adverse employment action when he was terminated.

65.    Plaintiff's race was the motivating factor in Defendant's actions against Plaintiff.

66.    As a direct and proximate cause of the actions and conduct set forth herein, Plaintiff suffered and will continue to suffer damages, emotional distress, and inconvenience.

67.    Defendants, through their agents and employees, engaged in discriminatory practices with malice or reckless indifference to Plaintiff's federally protected rights. Defendant is therefore liable for punitive damages in an amount sufficient to punish them and to deter them and other companies from engaging in similar conduct.

WHEREFORE,  Plaintiff prays for judgment against Defendant for a finding that Plaintiff has been subjected to unlawful discrimination in violation of 42 U.S.C. § 1981; for compensatory damages, including monetary losses, emotional pain and suffering, loss of enjoyment of life and other non-monetary losses; punitive damages, equitable relief, front pay, back pay, costs expended, reasonable attorney and expert fees, pre-judgment and post- judgment interest, and for such other and further relief the Court deems just and proper.

## COUNT III
### Hostile Work Environment
### 42 U.S.C. § 1981

68.     Plaintiff incorporates by reference every other allegation made herein.

69.     Plaintiff belongs to a protected group and engaged in protected activity when he reported to Defendant the race discrimination, intimidation and harassment.

70.     During the course of Plaintiff's employment, Defendant's representatives, acting within the scope and course of employment, engaged in intentional discrimination against Plaintiff.

71.     Defendant acted with the purpose of creating a hostile work environment. Defendant subjected Plaintiff to a hostile work environment, ridicule and intimidation.

72.    Defendant's unwelcome harassment had the purpose and effect of unreasonably interfering with Plaintiff's work performance thereby creating an intimidating, hostile and offensive work environment.

73.    The harassment was based on and motivated by Plaintiff's race and his chosen religion.

74.    The harassment was sufficiently severe or pervasive so as to affect a term, condition, or privilege of Plaintiff's employment.

75.    The conduct as described herein would have offended a reasonable person of the same race in Plaintiff's position.

76.    Management level employees knew, or should have known, of the racial harassment and racial discrimination described herein, but failed to take appropriate remedial action.

77.    By failing to conduct a prompt, thorough and honest investigation of Plaintiff's allegations and of other witnesses, Defendant exacerbated the racially hostile environment and racial discrimination in Plaintiff's work place.

78.    Because of its actions, defendants deliberately rendered Plaintiff's working conditions intolerable.

79.    The conduct alleged herein adversely affected the terms, conditions, or privileges of plaintiff's employment.

80.    As a direct and proximate cause of the actions and conduct set forth herein, Plaintiff suffers and will continue to suffer damages, emotional distress, and inconvenience.

81.    Defendant through its' agents and employees, engaged in discriminatory patterns and practices with malice or reckless indifference to Plaintiff's federally protected rights. Defendant is therefore liable for punitive damages in an amount sufficient to punish it and to deter it and other companies from engaging in similar conduct.

WHEREFORE, Plaintiff prays for judgment against Defendant, for a finding that Plaintiff was subjected to unlawful discrimination in violation of 42 U.S.C. § 1981; for compensatory damages, including monetary losses, emotional pain and suffering, loss of enjoyment of life and other non-monetary losses; punitive damages, equitable relief, front and back pay, costs expended, reasonable attorney and expert fees, pre-judgment and post-judgment interest, and for such other and further relief the Court deems just and proper.

### COUNT IV
### Retaliation
### 42 U.S.C. § 1981

82.    Plaintiff incorporates by reference every other allegation made herein.

83.    Plaintiff engaged in protected activity when he made complaints about the racial discrimination and harassment.  Plaintiff engaged in protected activity when he requested a religious exemption.

84.    By reason of Plaintiff's complaints, Defendants retaliated against Plaintiff and but for his race, religion and protected activity concerning his complaints and exemption request, Plaintiff would not have been disciplined and ultimately terminated.

14

85.     Defendants' retaliation against Plaintiff was committed with malice or reckless disregard of his federally protected rights. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish defendant and to deter it and other companies from engaging in similar conduct.

86.     Defendants' retaliatory actions against Plaintiff caused him to suffer emotional distress, humiliation, intimidation, employment related benefits, income and loss of enjoyment of life.

87.     As a direct and proximate cause of the actions and conduct set forth herein, Plaintiff suffers and will continue to suffer damages, emotional distress, and inconvenience.

WHEREFORE, Plaintiff prays for judgment against Defendant,  for a finding that Plaintiff was subjected to unlawful discrimination and retaliation in violation of 42 U.S.C. § 1981; for compensatory damages, including monetary losses, emotional pain and suffering, loss of enjoyment of life and other non-monetary losses; punitive damages, equitable relief, front and back pay, costs expended, reasonable attorney and expert fees, pre-judgment and post-judgment interest, and for such other and further relief the Court deems just and proper.

## COUNT V
## Race Discrimination
## Title VII

88.     Plaintiff incorporates by reference every other allegation made herein.

89.     Defendant has discriminated against Plaintiff in violation of Title VII of the Civil Rights Act by subjecting him to different treatment because of his race.

90.    Defendant is liable for the harassment and discrimination perpetrated by its agents, managers and supervisors.

91.    Plaintiff reported the racially offensive acts of employees to Defendant's managers and HR, yet no corrective action took place.

92.    Plaintiff was forced to perform his duties in a hostile work environment. The racially offensive comments and racial tropes by managers and other supervisors in continuously berating, harassing and intimidating Plaintiff purposefully interfered with Plaintiff's ability to perform his job. Defendant created a hostile work environment and retaliated against Plaintiff by transferring him between various positions, denying him the schedule and additional hours afforded to all other non-Muslim, Caucasian workers, and ultimately terminating his employment.

93.    As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer harm including, but not limited to lost wages, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish. These damages are continuing and should be awarded in an amount to be determined at trial.

94.    Plaintiff is an African-American male who was subjected to unwelcome harassment, racially offensive statements and conduct and that harassment affected a term, condition or privilege of his employment. But for his race and complaints of discrimination, he would not have been harassed.

WHEREFORE, Plaintiff prays for judgment against Defendant, for a finding that Plaintiff was subjected to unlawful discrimination and retaliation in violation of

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e; for compensatory damages, including monetary losses, emotional pain and suffering, loss of enjoyment of life and other non-monetary losses; punitive damages, equitable relief, front pay, costs expended, reasonable attorney and expert fees, pre-judgment and post-judgment interest, and for such other and further relief the Court deems just and proper.

**COUNT VI**
**Fair Labor Standards Act (FLSA) Violation**

95.    Plaintiff incorporates by reference every other allegation made herein.

96.    Defendant paid Plaintiff on an hourly basis and he was entitled to overtime pay pursuant to the protections of the Fair Labor Standards Act as set forth in 29 U.S.C. §§ 201, et seq.

97.    Defendant is subject to the provisions of the Fair Labor Standards Act.

98.    Plaintiff worked in excess of a forty hour week.  Defendant requested and needed workers to perform work in addition to their regular schedule. Defendant received the benefit of Plaintiff's labor and services without just compensation.

99.    Defendant knew and acknowledged that Plaintiff performed this work but refused to pay Plaintiff.

100.    Defendant willfully violated the FLSA by failing to pay Plaintiff and all wages due including overtime premiums for hours accrued beyond forty (40) in a workweek.

101.    Defendant has not acted in good faith nor with reasonable grounds to believe that its actions and omissions complied with the FLSA.  Plaintiff informed

Defendant that it failed to pay wages due as well as accrued time. Defendant ignored Plaintiff's request for payment.

102.    As a result of the Defendant's willful violations of the FLSA's overtime pay provisions, Defendants have unlawfully withheld wages from Plaintiff. Defendant is liable to Plaintiff for unpaid wages including overtime compensation, an additional equal amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Plaintiff prays for judgment against Defendant, for a finding that Plaintiff was denied wages due and owing in violation of the Fair Labor Standards Act; for liquidated damages, attorney's fees and costs, pre-judgment and post-judgment interest, expert fees and for such other and further relief the Court deems just and proper.

## COUNT VII
## Unjust Enrichment

103.    Plaintiff incorporates by reference every other allegation made herein.

104.    Plaintiff conferred a benefit on Defendant by working overtime and assisting Defendant with unproductive departments.

105.    The benefit conferred on Defendant was at Plaintiff's expense. Defendant has now deprived Plaintiff of income which he is due. Defendants have withheld wages, deducted time in excess of his religious exemption and other employment benefits without just cause.

106.    Defendant requested overtime work.    Plaintiff was placed in the untenable position of working overtime due Defendant's unfair policy which reduced his pay by two hours per day.

107.    Defendant's actions are unreasonable and it would be unjust to allow Defendants to retain the benefits conferred by Plaintiff.

108.    Defendant's fraudulent actions in retaining the wages and benefits and refusing to pay Plaintiff were intentional, willful, wanton, and done with malice. Defendant's intentional actions caused harm to Plaintiff without just cause.

WHEREFORE, Plaintiff prays for judgment against Defendant, for a reasonable sum of money as is allowable by law and as will fairly and reasonably compensate Plaintiff for his damages, for his actual damages, and for pre-judgment and post-judgment interest at the greatest rate allowed by law.

Respectfully submitted,

**KATRINA Y. ROBERTSON, LLC**

_/s/ *Katrina Y. Robertson*_____
Katrina Y. Robertson  KSD #78226
The Cable Building
1321 Burlington Street, Ste 600
North Kansas City, Missouri 64116
Office: (816) 885-4974
Facsimile: (816) 817-4964
Email:  kyr@kyrobertsonlaw.com

Attorney for Plaintiff